UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HEALTH & SUN RESEARCH, INC.
d/b/a Kava Kava Intl. and
Vegas Tan,

   Plaintiff,
v.           Case No. 8:12-cv-2319-T-33MAP

AUSTRALIAN GOLD, LLC,

   Defendant,
_____/

AUSTRALIAN GOLD, LLC,

   Counter-Plaintiff,
v.

HEALTH & SUN RESEARCH, INC.
d/b/a Kava Kava Intl. and
Vegas Tan,

   Counter-Defendant.
_____/

**ORDER**

  This matter comes before the Court pursuant to Australian Gold, LLC's Motion in Limine (Doc. # 47), which was filed on September 13, 2013.  Health and Sun Research, Inc. filed a Response in Opposition to the Motion in Limine (Doc. # 52) on September 27, 2013.  For the reasons that follow, the Motion in Limine is granted in part and denied in part.

**I. Discussion**

  Australian Gold seeks an Order barring Health and Sun from introducing evidence on six topics at trial: (1) evidence

of "actual confusion;" (2) exemplars of Health and Sun's Purple Rain and Royal Flush products; (3) testimony by a Health and Sun representative on any topics for which Health and Sun's Rule 30(b)(6), Fed. R. Civ. P., corporate representative was not knowledgeable; (4) evidence concerning the distribution of Health and Sun's products by Ultraviolet Resources International; (5) lost profits evidence; and (6) evidence regarding management changes at Australian Gold. The Court will address each issue below.

1. **Actual Confusion**

In response to the Motion in Limine, Health and Sun "agrees" that it "has not uncovered any evidence of actual confusion between its asserted Purple Rain and Royal Flush trademarks and those products subsequently marketed and sold by Australian Gold under the Purple Reign and Royal Flush marks." (Doc. # 52 at 3). Health and Sun also remarks that "while there was no evidence of actual confusion adduced during discovery in the instant case, Health & Sun can still easily meet its burden to establish a likelihood of confusion between the respective products." Id.

Because Health and Sun agrees that it will not present evidence of actual confusion during the trial, Australian Gold's request for an Order barring the introduction of actual

confusion evidence is denied as moot.

**2.  Exemplars of Purple Rain and Royal Flush**

During discovery, Australian Gold requested that Health and Sun produce "an exemplar of each product sold by Health & Sun having either of the Purple Rain or Royal Flush marks affixed thereto." (Doc. # 47 at 4). Health and Sun responded that it would produce the requested items. (Doc. # 47-2 at 10). However, it is undisputed that Health and Sun never tendered an exemplar to Australian Gold for either Purple Rain or Royal Flush.

In response to the Motion in Limine, Health and Sun indicates: "[d]espite not having any current inventory in its possession for production to Australian Gold, Health & Sun submits that it should be permitted to enter such exemplars into evidence to the extent they can be obtained from a third party source and authenticated at trial." (Doc. # 52 at 4). Health and Sun also maintains that "Australian Gold cannot claim to be prejudiced by the introduction of authenticated exemplars wherever they are obtained as Health & Sun produced numerous photographs of the products from advertisements, catalog pages, etc. during the course of discovery." (Id.).

The record reflects that Australian Gold requested exemplars of the two products at issue during discovery and

3

that Health and Sun did not produce any exemplar of the products. To the Court's knowledge, Australian Gold is still without a sample of Health and Sun's Royal Flush or Purple Rain products.

At this late juncture, Health and Sun contends that it should be permitted to introduce "authenticated" bottles of its Royal Flush and Purple Rain products; however, Health and Sun has not adequately explained why it failed to provide such "authenticated" products to its adversary during discovery.

In this action, in which Health and Sun claims that Australian Gold infringed its trademarks, exemplars of the trademarked products in question are highly relevant. In addition, Australian Gold's request for physical samples of Purple Rain and Royal Flush was neither unduly burdensome nor overly broad. Furthermore, the Court is not persuaded that Health and Sun's failure to provide exemplars of the products was harmless. The Court can envision a scenario where providing a photograph of a product, rather than an exemplar of the actual product, would be justified, such as when the product in question is massive, dangerous, or extremely valuable. This is not the case with small bottles of tanning lotion.

4

The Federal Rules of Civil Procedure "strongly favor full discovery whenever possible." Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985). The purpose of discovery under the Federal Rules of Civil Procedure is to require the timely disclosure of relevant information to aid in the ultimate resolution of disputes in a civil action. United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958). These Rules "make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." Id. "The concept of trial by ambush has long ago fallen into desuetude in both state and federal courts." Perfect Web Techs. v. InfoUSA, Inc., No. 07-80286, 2008 U.S. Dist. LEXIS 20761, at *4-5 (S.D. Fla. Mar. 17, 2008). The Court grants the Motion in Limine as to physical exemplars of Health and Sun's Purple Rain and Royal Flush products. Based on its failure to disclose any physical exemplars of its products during discovery, Health and Sun may not introduce exemplars of its Purple Rain and Royal Flush products during trial.

### 3. 30(b)(6) Corporate Representative

Australian Gold asserts that "Health & Sun's Rule 30(b)(6) corporate designee [Mr. Carollo] was unprepared or unable to provide knowledgeable answers on a variety of

noticed topics." (Doc. # 47 at 5). Australian Gold points to the following specific topics on which Mr. Carollo was allegedly unable to provide informative deposition testimony and seeks an Order barring Health and Sun from offering evidence on such topics:

> **Topic No. 6** Plans, investments, intentions, or efforts to resume and/or increase sales of ROYAL FLUSH products during the years 2005 to the present.
> **Topic No. 7** Plans, investments, intentions, or efforts to resume and/or increase sales of PURPLE RAIN products during the years 2005 to the present.
> **Topic No. 12** All internet, radio, television and print advertising Health & Sun has broadcast and/or published in the United States including or referring to the PURPLE RAIN or ROYAL FLUSH marks; including the identification (title, number, or otherwise) of each advertisement and the date(s) and location(s) for each such advertisement.
> **Topic No. 13** The dollar amount of advertising and promotional expenditures in each different type of media utilized by Defendant to promote its goods or services in conjunction with the PURPLE RAIN and ROYAL FLUSH marks.

(Id. at 6).

Health and Sun agrees that Mr. Carollo did not know the answers to some of the questions posed during his 30(b)(6) deposition, but correctly argues that a 30(b)(6) deponent does not have to be "perfect." See QBE Ins. Corp. v. Jorda Enters., 277 F.R.D. 676, 690 (S.D. Fla. Jan. 30, 2012)("Absolute perfection is not required of a 30(b)(6) witness. The mere fact that a designee could not answer every

6

question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation.").

The Court has reviewed Mr. Carollo's testimony and determines that his answers to deposition questions were not so vague and deficient as to warrant an Order barring Health and Sun from providing evidence on the topics enumerated above. However, the Court notes that Health and Sun is bound to the answers given by Mr. Carollo during his Rule 30(b)(6), Fed. R. Civ. P., deposition. As explained in QBE Insurance Corporation,

> When a corporation's designee legitimately lacks the ability to answer relevant questions on listed topics and the corporation cannot better prepare that witness or obtain an adequate substitute, then the "we-don't-know" response can be binding on the corporation and prohibit it from offering evidence at trial on those points. Phrased differently, the lack of knowledge answer is itself an answer which will bind the corporation at trial.

277 F.R.D. at 690. In the instance that Health and Sun attempts to provide testimony or evidence at trial which differs from the answers provided during Mr. Carollo's deposition, Australian Gold should bring the matter to the Court's attention. Health and Sun is reminded: "The conclusion that the corporation is bound at trial by a legitimate lack of knowledge response at the 30(b)(6)

deposition is, for all practical purposes a variation on the rule and philosophy against trial by ambush." Id.

Thus, the Court declines to enter an Order placing a complete bar on Health and Sun's ability to offer testimony on topics 6, 7, 12, and 13 described above. However, Health and Sun is bound by the answers provided by Mr. Carollo during his 30(b)(6) deposition.

### 4.  **Ultraviolet Resources**

Australian Gold seeks an Order barring Health and Sun from offering evidence about Ultraviolet Resources International, which is a distributor of Health and Sun's products. Australian Gold explains that Health and Sun did not identify Ultraviolet Resources or its agent, Mr. Hayes, in Health and Sun's Rule 26, Fed. R. Civ. P., initial disclosures or in its interrogatory responses. Australian Gold indicates that the only notice it received about Ultraviolet Resources came on June 28, 2013, three weeks before the July 19, 2013, discovery deadline, when Health and Sun produced to Australian Gold an email communication from Mr. Hayes. (Doc. # 47-5).

In response to Australian Gold's assertion that evidence about Ultraviolet Resources should be barred, Health and Sun argues that when it prepared its initial disclosures, it was

8

not aware that it would offer Mr. Hayes or Ultraviolet Resources's representatives as potential witnesses. (Doc. # 52 at 11). Health and Sun also argues that Australian Gold can claim neither surprise nor prejudice as to Ultraviolet Resources because information about Ultraviolet Resources was disclosed during discovery. Furthermore, as to the specific email communication from Mr. Hayes in question, Health and Sun indicates that it sent the email communication directly to Australian Gold on the same day that Health and Sun received the email communication. (Id.).

Rule 37(c), Fed. R. Civ. P., provides that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." As explained in Mitchell v. Ford Motor Co., 318 F. App'x 821, 824 (11th Cir. 2009), "[t]he burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." Furthermore, "in determining whether the failure to disclose was justified or harmless, [the Court] consider[s] the non-disclosing party's explanation for its failure to

disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted." Lips v. City of Hollywood, 350 F. App'x 328, 340 (11th Cir. 2009).

It is undisputed that Health and Sun failed to include Ultraviolet Resources on its initial disclosures. However, Health and Sun alerted Australian Gold about Ultraviolet Resources prior to the discovery deadline. On June 26, 2013, Mr. Carollo provided testimony identifying Ultraviolet Resources as a distributor. (Doc. # 48-1 at 22:22-23:1). In addition, Health and Sun forwarded the Hayes email communication to Australian Gold on June 28, 2013, the same day that Health and Sun received the email communication. Health and Sun asserts that "Australian Gold had ample notice of the information regarding [Ultraviolet Resources's] distribution of Purple Rain and could have conducted additional discovery had they chosen to do so. Instead, they opted to forego investigating this information in hopes they could later rely on allegations of prejudice after the close of discovery." (Doc. # 52 at 12-13).

The Court determines that Health and Sun's failure to disclose Ultraviolet Resources is excusable under the facts

10

presented because Health and Sun provided information to Australian Gold about Ultraviolet Resources during the course of discovery. See, e.g., Little v. Groome Transp. of Ga., Inc., No. 1:07-cv-455-JOF, 2008 U.S. Dist. LEXIS 83701, at *13-14 (N.D. Ga. Sept. 15, 2008)(finding that "there could be no unfair surprise in the production of . . . [the] declaration" of a witness not listed on an initial disclosure because the identity of the witness was made known during discovery).

However, Australian Gold asserts that, although it was made aware of the information about Ultraviolet Resources approximately three weeks prior to the close of discovery, it did not have sufficient time to conduct meaningful discovery prior to the discovery deadline. Rather than imposing discovery sanctions against Health and Sun under Rule 37, Fed. R. Civ. P., as requested by Australian Gold, the Court will ameliorate any prejudice Australian Gold sustained by reopening discovery for 30 days for the limited purpose of allowing Australian Gold to seek expedited discovery from Ultraviolet Resources regarding Health and Sun. Accordingly, the Motion in Limine is denied without prejudice as to Ultraviolet Resources and the email communication from Mr.

11

Hayes.

### 5. Lost Profits

Australian Gold asserts that Health and Sun has "no evidence to satisfy the criteria to even present a lost profits claim." (Doc. # 47 at 11). Among other things, Australian Gold indicates that Health and Sun's expert, Gary Raines, provided a deficient expert report and that Health and Sun "admitted that it did not know of any sales lost to Australian Gold's products." (Id.).

Health and Sun points out that its expert addresses the issue of lost profits and "[b]ased on his review of the record evidence, Mr. Raines opined that Health & Sun suffered actual damages in an amount equal to the number of infringing units sold by Australian Gold multiplied by Health & Sun's average profit per unit of its Purple Rain and Royal Flush products." (Doc. # 52 at 13). Australian Gold previously sought to exclude Mr. Raines's expert testimony (Doc. # 44), and this Court denied the request to exclude Mr. Raines's testimony without prejudice. (Doc. # 57). The Court declines to foreclose Health and Sun's avenue to lost profits damages based on two paragraphs of argument buried in Australian Gold's voluminous Motion in Limine. The Motion in Limine is

12

thus denied as to Health and Sun's demand for lost profits.

### 6. <u>Management Changes at Australian Gold</u>

Australian Gold seeks an Order barring reference to "legal disputes among investors in Australian Gold and its related companies [that] have resulted in certain changes in its management and personnel." (Doc. # 47 at 12). Australian Gold seeks an Order specifically prohibiting Health and Sun from mentioning John Menard, Stephen Hilbert, Tomisue Hilbert, Eric Webber, Lisa Trudeau, and Scott Matthews. Australian Gold also notes that, as to Mr. Matthews, Health and Sun should be limited to explaining that Mr. Matthews "is no longer with the company." (<u>Id.</u>).

The final issue presented in the Motion in Limine appears to be moot. Health and Sun indicates:

> While Health & Sun largely agrees with Australian Gold that the disputes amongst these individuals are unrelated to the instant case, it would agree to exclude references to John Menard, Stephen Hilbert, Tomisue Hilbert and Lisa Trudeau at trial with the caveat that if these individuals or the subject disputes come up during Australian Gold's cross examination of any Health & Sun witnesses or during Australian Gold's case-in-chief, Health & Sun should be allowed to further inquire as to those issues raised during such testimony. Finally, with regard to Scott Matthews, Health & Sun is agreeable to making reference to Mr. Matthews "no longer being with the company" as Australian Gold proposes.

13

(Doc. # 52 at 13-14).[1] Taking into consideration Health and Sun's response to the Motion in Limine as to the management changes at Australian Gold and other issues, the Court finds the issue to be moot.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

Australian Gold, LLC's Motion in Limine (Doc. # 47) is **GRANTED IN PART AND DENIED IN PART** consistent with the foregoing.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 25th day of November, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

---

[1] Health and Sun does not mention Eric Webber in its Response in Opposition to the Motion in Limine. The Court presumes that Health and Sun's omission of Mr. Webber in its analysis is due to a scrivener's error. However, in the instance that Health and Sun takes a different position as to Mr. Webber, Health and Sun should advise the Court prior to the scheduled pretrial conference.

14