UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HEALTH & SUN RESEARCH, INC.
d/b/a Kava Kava Intl. and
Vegas Tan,

        Plaintiff,

v.                            Case No. 8:12-cv-2319-T-33MAP

AUSTRALIAN GOLD, LLC,

        Defendant,

_____/

AUSTRALIAN GOLD, LLC,

        Counter-Plaintiff,

v.

HEALTH & SUN RESEARCH, INC.
d/b/a Kava Kava Intl. and
Vegas Tan,

        Counter-Defendant.

_____/

**ORDER**

    This cause comes before the Court pursuant to eleven ripe Motions for Judgment as a Matter of Law regarding Health & Sun Research, Inc.'s PURPLE RAIN trademark, filed by both Health & Sun and Australian Gold, LLC. (Doc. ## 89, 91, 96, 97, 99, 101, 103, 107, 118, 119, 135).  After due consideration, the Court denies the Motions.

**I.**  **Background**

    On January 17, 2014, after a four-day trial, the jury entered its verdict in favor of Health & Sun with respect to

Health & Sun's PURPLE RAIN trademark. (Doc. # 109).[1]  Among other relevant determinations, the jury found that (1)  Health & Sun "own[s] rights in the PURPLE RAIN trademark that are entitled to protection;" (2) Health & Sun owns these rights on a nationwide basis; (3) "Health & Sun used its PURPLE RAIN trademark in commerce prior to the date of first use of Australian Gold's trademark in the geographic area(s) where Health & Sun owns rights;" and (4) "Australian Gold's use of its PURPLE REIGN trademark causes a likelihood of confusion with Health & Sun's PURPLE RAIN trademark in the geographic area(s) where Health & Sun currently owns trademark rights." (Doc. # 109 at 1-2).  The jury awarded  Australian Gold's profits to Health & Sun in the amount of $147,615. (Id. at 2). The jury found against Australian Gold on Australian Gold's defense of trademark abandonment as to PURPLE RAIN. (Id. at 6).

At this juncture, Australian Gold seeks a Judgment as a Matter of Law: (1) that Health & Sun's trademark rights in the PURPLE RAIN product should be limited to Ohio, and (2) that Health & Sun abandoned the PURPLE RAIN mark. (Doc. ## 96, 97,

---

[1] The jury's verdict also concerned the ROYAL FLUSH trademark; however, the parties' Motions do not concern the jury's findings as to that mark, and the Court will not address that mark herein.

118, 119).  Health & Sun, on the other hand, seeks Judgment as a Matter of Law on the issue of its damages, asserting that, instead of $147,615, the jury should have awarded Australian Gold's profits in the amount of $367,663. (Doc. ## 107, 135). The Court will address each issue in turn.

## II.  **Rule 50 Standard**

Rule 50(b) governs the Court's resolution of the pending Motions and states:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b).  Under Rule 50, a "district court should grant judgment as a matter of law when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for [plaintiff] on a material element of [plaintiff's] cause of action."  Pickett v. Tyson Fresh Meats, Inc., 420 F.3d 1272, 1278 (11th Cir. 2005) (citations omitted).  Stated differently, a district court should grant a Rule 50 motion "only if the evidence is so overwhelmingly in

3

favor of the moving party that a reasonable jury could not arrive at a contrary verdict." <u>Middlebrooks v. Hillcrest Foods, Inc.</u>, 256 F.3d 1241, 1246 (11th Cir. 2001).

The Court "must review all of the evidence in the record and must draw all reasonable inferences in favor of the nonmoving party[,]" but should nevertheless be mindful not to intrude into the province of the jury. <u>Cleveland v. Home Shopping Network, Inc.</u>, 369 F.3d 1189, 1192-93 (11th Cir. 2004). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133, 150 (2000). Moreover, a court "must disregard all evidence favorable to the moving party that the jury is not required to believe." <u>Id.</u> at 151. Thus "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." <u>Id.</u> (citation and quotations omitted).

Although a jury's findings are not inherently shielded from review, a jury's findings are nevertheless to be afforded due deference. <u>Alphamed Pharm. Corp. v. Arriva Pharm., Inc.</u>,

4

432 F. Supp. 2d 1319, 1333 (S.D. Fla. 2006). In addition, a
"jury may properly reconstruct a series of events by drawing
an inference upon an inference[,]" Fenner v. Gen. Motors
Corp., 657 F.2d 647, 650-651 (5th Cir. June 8, 1981), insofar
as the inferences drawn are not "unreasonable inferences, or
those at war with the undisputed facts."[2] Alphamed, 432 F.
Supp. 2d at 1333 (quoting United Fire & Cas. Ins. Co. v.
Garvey, 419 F.3d 743, 746 (8th Cir. 2005) (citation omitted)).

## III. **Analysis**

### A.   **Geographic Scope of PURPLE RAIN Trademark**

As noted, the jury determined that Health & Sun enjoys
nationwide rights in its PURPLE RAIN mark. (Doc. # 109 at 1).
However, Australian Gold requests Judgment as a Matter of Law
arguing that "there is no basis to find nationwide trademark
protection for Health & Sun's PURPLE RAIN." (Doc. # 118 at
16).   In the alternative, Australian Gold seeks an order
limiting Health & Sun's trademark rights in PURPLE RAIN to
Westlake, Ohio, and reducing the jury's award from $147,615 to
$9,585.   Health & Sun counters that sufficient evidence
supports the jury's finding that Health & Sun enjoys

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th
Cir. 1981) (en banc), the Eleventh Circuit adopted as binding
precedent all decisions of the former Fifth Circuit handed
down prior to October 1, 1981.

nationwide rights to the relevant mark and that the jury's determination should not be disturbed.

## 1.   Common Law Trademark Rights in a Particular Geographic Location

Trademark rights do not exist without bona fide use in commerce. 15 U.S.C. § 1127.  The Lanham Act defines "use in commerce" as "the bona fide use of a mark in the ordinary course of business." Id.  Bona fide use must be "sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark . . . even without evidence of actual sales." Planetary Motion, Inc. v. Techplosion, Inc., 261 F.3d 1188, 1195 (11th Cir. 2001).   Whether "use" is sufficient to establish trademark rights is dependent on the totality of the circumstances, and "the existence of sales or lack thereof does not by itself determine whether a user of a mark has established ownership rights therein." Id. at 1196; see also Person's Co., Ltd. v. Christman, 900 F.2d 1565, 1571 (Fed. Cir. 1990)("There is [] no rule of law that the owner of a trademark must reach a particular level of success, measured either by the size of the market or by its own level of sales.").

Common law trademark rights are established through actual prior use in commerce. <u>Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.</u>, 889 F.2d 1018, 1022-23 (11th Cir. 1989)(explaining that the rights of a holder of a federally registered mark are subject to the rights of a holder of an unregistered mark where the unregistered mark was used first in the particular geographic market.). As stated in <u>Tana v. Dantanna's</u>, 611 F.3d 767, 780 (11th Cir. 2010), "Geographic considerations are also particularly relevant where a plaintiff holds only common-law trademark rights in a mark because it is well-established that the scope of protection accorded his mark is coextensive only with the territory throughout which it is known and from which it has drawn its trade." The geographic location in which a common law trademark is afforded protection also includes a "zone of reasonable future expansion." <u>Tally-Ho</u>, 889 F.2d at 1027; <u>see also Carnival Brand Seafood Co. v. Carnival Brands, Inc.</u>, 187 F.3d 1307, 1312-13 (11th Cir. 1999)(suggesting that the zone of natural expansion applies not only to goods and services, but also to geographic locations).

   2.   <u>**Evidence of Nationwide Rights to PURPLE RAIN**</u>

Lewis Henry, the individual in charge of Health & Sun's

7

day to day operations, testified that Health & Sun made sales of its PURPLE RAIN product to distributors and to salons in the following states: Alabama, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kentucky, Michigan, Minnesota, Missouri, North Carolina, Ohio, Oklahoma, Pennsylvania, Tennessee, Texas, Virginia, Washington, and Wisconsin. (Doc. # 121 at 194-196). Mr. Henry further testified that he physically saw PURPLE RAIN in salons in the following states, even though Health & Sun did not make direct sales of the PURPLE RAIN product to any customer in such state: Kansas, Maine, Massachusetts, Mississippi, Montana, New York, Oregon, and Rhode Island. (Id. at 201, Doc. # 122 at 9).

That leaves several states where Mr. Henry testified that he neither sold PURPLE RAIN directly nor had seen PURPLE RAIN for sale in a salon. During the trial, counsel for Health & Sun asked Mr. Henry: "on the map, I see several states that don't have an X or a star [indicating direct sales or having been observed in a state]. Is it your understanding that the products aren't in those states, PURPLE RAIN products specifically are not in those states?" (Doc. # 122 at 8). Mr. Henry responded: "No, that's not my understanding at all. Our

8

understanding is our distribution is selling to almost every state.  Even if I personally haven't seen it in the state, you have to assume that they are selling it to all states, because even the states that I don't have distribution in, I've seen product there." (Id.).  Mr. Henry also testified:

> When I'm selling to distributors, our purpose is to kind of call on the salons, advertise to the salons, getting the salons interested in our products, getting the distributors trained on our products, getting distributors to push our products in our market, our industry.  There is no such thing as territories in our market.  Every distributor we have would be responsible to . . . be selling to every one of the 50 states.

(Doc. # 122 at 6-7).

As argued by Health & Sun in its Response to Australian Gold's Motion for Judgment as a Matter of Law, the jury could reach the "reasonable conclusion" that Health & Sun's "distributors were doing their job." (Doc. # 131 at 7). While Australian Gold contends that Health & Sun failed to show nationwide distribution of its PURPLE RAIN product, it appears that Australian Gold's own corporate comptroller, Martin Sperry, confirmed that both Ultraviolet Resources International and Four Seasons are nationwide distributors, and both Australian Gold and Health & Sun utilize these

distributors. (Doc. # 122 at 221).[3]  Mr. Sperry explained that he expected these common distributors to sell products on a nationwide basis:

> Q:  And do you know what Ultraviolet Resources does with the PURPLE REIGN after it receives it?
> A:  Not specifically, I assume they sell it into salons.
> Q:  Do you know if they sell it only into salons in Westlake, Ohio, or do they sell it to salons outside of Westlake, Ohio?
> A:  Our distributors can sell to salons all over.
> Q:  Across the country?
> A:  Yes.

(Doc. # 122 at 221-222).

Considering Health & Sun's direct sales and sales to distributors, and taking into consideration the aforementioned testimony from Mr. Henry and Mr. Sperry, the Court determines that the jury's finding of nationwide trademark protection was supported by the evidence.  The Court declines to limit Health & Sun's trademark protection to Westlake, Ohio, as suggested by Australian Gold.

## B.  "De Minimis" Sales

Australian Gold also characterizes Health & Sun's sales of PURPLE RAIN as "de minimis" and asserts that nationwide

---

[3] Mr. Sperry is the corporate comptroller for New Sunshine (Australian Gold's parent company) and is also the corporate comptroller for Australian Gold. (Doc. # 122 at 214).

protection is not warranted because Health & Sun's sales were "transitory, spasmodic, and inconsiderable." (Doc. # 118 at 9)(internal citation omitted).

As stated above, "[t]here is [] no rule of law that the owner of a trademark must reach a particular level of success, measured either by the size of the market or by its own level of sales." <u>Person's Co., Ltd.</u>, 900 F.2d at 1571. "[T]here is no simple dollar amount or population-to-sales ratio that will apply across the board to products of different types." <u>Inmuno Vital, Inc. v. Golden Sun, Inc.</u>, 49 F. Supp. 2d 1344, 1353 (S.D. Fla. 1997).

Furthermore, "[t]he fact that a business is small and its trade immodest does not necessarily preclude the acquisition of trademark rights." <u>Harod v. Sage Prods., Inc.</u>, 188 F. Supp. 2d 1369, 1378 (S.D. Ga. 2002). The Court agrees with Health & Sun that "the fact that [Health & Sun's] overall volume of sales may be small *as compared to [Australian Gold's] sales* of the infringing PURPLE REIGN lotion does not preclude a finding of infringement." (Doc. # 131 at 9)(emphasis in original).  Both Health & Sun's president and CEO Mr. Carollo and Australian Gold's comptroller Mr. Sperry testified that their sales of the respective PURPLE RAIN and

11

PURPLE REIGN lotions were each less than 1% of the annual sales of products overall for their respective companies. (Doc. # 121 at 123, Doc. # 122 at 233). Although Australian Gold is a larger company than Health & Sun, the sales of both parties' lotions are similar when compared as a portion of overall sales. The Court accordingly denies Australian Gold's Motion for Judgment as a Matter of Law premised on "de minimis" sales and upholds the jury's verdict reflecting that Health & Sun's PURPLE RAIN trademark is entitled to nationwide protection.

 **C.** **PURPLE RAIN Trademark Abandonment**

Australian Gold previously moved for summary judgment in its favor on the theory that Health & Sun abandoned its PURPLE RAIN trademark. The Court denied the summary judgment motion and submitted the issue to the jury. (Doc. # 56). The jury found that Health & Sun did not abandon its PURPLE RAIN mark. (Doc. # 109 at 6). Specifically, the jury answered "no" to whether "Health & Sun ceased using the PURPLE RAIN trademark with the intent not to resume its use in the reasonably foreseeable future in one or more geographic areas." (Id.). At this juncture, Australian Gold seeks judgment as a matter of law on the issue of trademark abandonment as to PURPLE

RAIN.

### 1.   **Trademark Abandonment**

Under the Lanham Act, a trademark is deemed abandoned "when its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127; see also Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc., 304 F.3d 1167, 1173 (11th Cir. 2002)("a defendant who successfully shows that a trademark plaintiff has abandoned a mark is free to use the mark without liability to the plaintiff."); Tally-Ho, Inc., 889 F.2d at 1022-23 ("Trademark ownership is always appurtenant to commercial activity. Thus, actual and continuous use is required to acquire and retain a protectible interest in a mark.").

As stated in Cumulus Media, Inc., "Abandonment is trademark law's way of recognizing that trademark rights flow from use." 304 F.3d at 1173. That is, "if a trademark holder ceases using a mark with an intent not to resume its use, the mark is deemed abandoned and falls into the public domain and is free for all to use. Abandonment paves the way for future possession and property in any other person." Natural Answers, Inc. v. SmithKline Beecham Corp., 529 F.3d 1325, 1329 (11th Cir. 2008).

Australian Gold seeks a finding that Health & Sun has abandoned its trademark and, therefore, must establish two elements: "(1) that [Health & Sun] ceased using the mark in dispute and (2) that [Health & Sun] has done so with an intent not to resume its use." <u>Cumulus Media, Inc.</u>, 304 F.3d at 1174. For the purpose of determining when abandonment has occurred, the Lanham Act defines "use" as "the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127.  The Lanham Act directs that "intent not to resume [use] may be inferred from the circumstances." <u>Id.</u>  As discussed in <u>Natural Answers, Inc.</u>, the intent to resume use of a trademark "cannot be far-flung or indefinite; rather, there must be an intent to resume use within the reasonably foreseeable future." 529 F.3d at 1329.  Under the Lanham Act, "Nonuse for 3 consecutive years shall be prima facie evidence of abandonment, 15 U.S.C. § 1127, which creates a rebuttable presumption of intent not to resume use." <u>Id.</u> at 1329-1330.

Ultimately, Australian Gold faces a strict burden on its abandonment theory.  "Because a finding of abandonment works an involuntary forfeiture of rights, federal courts uniformly agree that defendants asserting abandonment face a stringent, heavy, or strict burden of proof." <u>Cumulus Media, Inc.</u>, 304

F.3d at 1175. "[B]oth non-use and intent not to resume must be strictly proved." Id.

### 2.    Health & Sun's Use of its PURPLE RAIN Mark

In the persuasive case of Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc., 458 F.3d 931, 938 (9th Cir. 2006), the court indicated, "abandonment requires complete cessation or discontinuance of trademark use." Id. (citing 15 U.S.C. § 1127). "Even a single instance of use is sufficient against a claim of abandonment of a mark if such use is made in good faith." Id.   Under the Lanham Act, "'use' of a trademark defeats an allegation of abandonment when: the use includes placement on goods sold or transported in commerce; is bona fide; is made in the ordinary course of trade; and is not made merely to reserve a right in a mark." Id. at 936; see also 15 U.S.C. § 1127.  Health & Sun can prove use of its mark with "[e]ven marginal, sporadic sales" as such sales "qualify as use and thereby preclude a finding of abandonment." Int'l Stamp Art, Inc. v. U.S. Postal Serv., No. 1:02-cv-2459-TWT, 2005 WL 3947951, at *6 (N.D. Ga. May 27, 2005).

Australian Gold asserts that because Health & Sun's sales of PURPLE RAIN were limited, Health & Sun abandoned its mark. However, the evidence, including Health & Sun's Sales History Report, shows that Health & Sun sold thousands of bottles of

its PURPLE RAIN product to distributors, as follows:

|       |       |
|-------|-------|
| 2003: | 1,300 |
| 2004: | 2,121 |
| 2005: | 409   |
| 2006: | 409   |
| 2007: | 0     |
| 2008: | 0     |
| 2009: | 1,468 |
| 2010: | 540   |
| 2011: | 1,970 |
| 2012: | 0     |

(Doc. # 121 at 197; Plf. Trial Ex. 133).[4]

The Court agrees with Health & Sun that "[t]he existence of these sales alone is sufficient to demonstrate that [Health & Sun] had continued its use of the PURPLE RAIN mark." (Doc. # 132 at 5). In addition, because Health & Sun sold its PURPLE RAIN product to multiple distributors, the jury could reasonably infer that, even during months when Health & Sun did not make any direct sales of its product, the distributors made sales to salons. See Reeves, 530 U.S. at 150 (stating that "all reasonable inferences" from the evidence must be drawn in favor of the non-moving party in the context of a motion for judgment as a matter of law).

---

[4] Mr. Carollo testified that sales data is not available for 2001 and 2002 because of a change in software programs at Health & Sun. (Doc. # 121 at 105).  He also testified that Health & Sun made sales of PURPLE RAIN in 2013. (Id. at 106)> However, those sales are not reflected in the Sales History Report, as that Report was generated in 2012.

### 3.    <u>Intent Not to Resume Use of the Mark</u>

The Court's determination that Australian Gold failed to show that Health & Sun ceased using the mark warrants the denial of Australian Gold's Motion for Judgment as a Matter of Law on the issue of abandonment.  However, for the sake of completeness, the Court will also address the second element for trademark abandonment - the intent not to resume use of the mark.

Even assuming that Health & Sun ceased using its mark, "[i]t is difficult for a defendant to prove a plaintiff's subjective intent to abandon a mark." <u>Int'l Stamp Art, Inc.</u>, 2005 U.S. Dist. LEXIS 42073, at *21.  "[T]he Lanham Act provides two aids for demonstrating intent.  First, it provides that intent not to resume may be inferred from the circumstances." <u>Cumulus</u>, 304 F.3d at 1174. "Second, it allows a showing of three years of consecutive nonuse to create a rebuttable presumption of intent not to resume use." <u>Id.</u>

Here, it is undisputed that there has never been a three-year period in which Health & Sun stopped selling PURPLE RAIN lotion.  Therefore, Australian Gold does not enjoy a presumption of abandonment, and must meet its strict burden of demonstrating that Health & Sun ceased using the PURPLE RAIN mark with the intent not to resume use of the mark.

The evidence adduced at trial supports the jury's determination that Health & Sun did not cease using the PURPLE RAIN mark with the intent not to resume use. Mr. Carollo testified that he launched the PURPLE RAIN product in 2001. (Doc. # 121 at 101). At that time, Health & Sun advertised the product at a Nashville, Tennessee trade show, created brochures and magazine ads featuring the product, and even sponsored a NASCAR driver. (Id. at 101-103). Mr. Carollo testified that Health & Sun made sales of PURPLE RAIN since its launch in 2001, through 2013. (Id. at 106). He acknowledged that there were some periods where Health & Sun did not sell any of its PURPLE RAIN product (for instance, 2007 and 2008). (Id.). However, Mr. Carollo testified that Health & Sun "never discontinued . . . PURPLE RAIN" and explained that any period lacking in sales was due to a downturn in the economy and not due to Health & Sun's intent not to sell its PURPLE RAIN product. (Id. at 107-108).

Health & Sun's witnesses consistently testified that PURPLE RAIN has always been available for purchase since its creation in 2001, and Health & Sun never ceased using the PURPLE RAIN mark with intent not to resume use. Furthermore, Mr. Carollo testified that Health & Sun has consistently defended its PURPLE RAIN mark by contacting Australian Gold

18

when Health & Sun discovered the infringing PURPLE REIGN
product, sending a pre-suit cease and desist demand, and,
ultimately, filing this lawsuit. (Doc. # 121 at 115-117); see
also Blue & White Food Prods. Corp. v. Shamir Food Indus.,
Ltd., 350 F. Supp. 2d 514, 519 (S.D.N.Y. 2004)(finding that a
mark holder's "willingness to invest in legal proceedings and
other efforts to protect the mark from infringement" is
evidence that the mark holder did not intend to abandon the
mark).

Australian Gold has not pointed to any evidence
concerning abandonment which invalidates the jury's verdict.
"If the jury's verdict is supported by substantial evidence-
that is, enough evidence that reasonable minds could differ
concerning material facts-the motion [for judgment as a matter
of law] should be denied." U.S. Anchor Mfg. v. Rule Indus.,
Inc., 7 F.3d 986, 993 (11th Cir. 1993). Finding that such
substantial evidence in favor of Health & Sun is present here,
the Court upholds the jury's determination that Health & Sun
did not abandon the PURPLE RAIN mark.

### D.   **The Measure of Australian Gold's Profits**

After determining that Australian Gold's PURPLE REIGN
product infringed Health & Sun's PURPLE RAIN product, the jury
awarded "Australian Gold's profits" in the amount of $147,615.

19

(Doc. # 109 at 2).  In its Motion for Judgment as a Matter of Law, Health & Sun asks the Court to adjust this figure to $367,663.  Health & Sun indicates that Australian Gold's relevant sales of PURPLE REIGN amounted to $686,223, and Australian Gold's profit margin was 55.6%. (Doc. # 135 at 2). The jury presumably deducted other expenses to arrive at the "profits" award of $147,615.  Health & Sun contends that the jury should not have deducted certain expenses (such as "selling costs" and "new product development costs"), which reduced the award. (Id.).

Under the Lanham Act, "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a); Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc., 833 F.2d 1484, 1487-88 (11th Cir. 1987).  "To allow a deduction from gross profits, Defendant must establish that the claimed expenses actually relate to the sale and production of the infringing product." Burger King Corp. v. Pilgrim's Pride Corp., 934 F. Supp. 425, 426 (S.D. Fla. 1996).

While Health & Sun now claims that the jury deducted too many costs, leaving Health & Sun with inadequate damages, during its closing argument, Health & Sun invited the jury to

20

do exactly what it did:

> Now, the burden that we have with regard to damages is to prove Australian Gold's gross sales. Under the law, they are allowed to deduct from those gross sales reasonable expenses that are attributable to the infringing products.
> . . . .
> Australian Gold provided . . . their estimated product development cost.  This is approximately $13,877.  We don't dispute that's a legitimate deduction for a product.
> Further, you heard testimony about pop-up displays, Designer Skin posters, other marketing materials that were legitimately tied to the launch of the Love DS line.  I'm not going to sit here and argue that those are not legitimate expenses.  If I've missed any expenses . . . Go ahead and deduct those. That's fine.
> If I missed any costs that you find through your review of the evidence that you feel should be deducted, feel free.  I have no problem with that.

(Doc. # 124 at 51-53).  Health & Sun also noted during its closing argument that "it's up to your discretion to make any additional deductions based on the invoices and other expenses proven by Australian Gold." (Id. at 82).

Health & Sun's current argument that the jury made improper deductions rings hollow in light of Health & Sun's closing argument statements inviting the jury to make any deductions proven by Australian Gold. It seems to this Court that any deductions made by the jury in arriving at the damages award were invited by Health & Sun.

Furthermore, while Health & Sun's Motion is premised on the argument that the jury utilized a "simple mathematical

21

formula" to reach its verdict on damages (Doc. # 135 at 2), the reality is that the jurors were not required to provide any formula to the Court or enumerate the costs deducted to arrive at the profits determination. As asserted by Australian Gold, Health & Sun's arguments regarding what costs the jury considered and deducted are pure "speculation." (Doc. # 141 at 10).

Here, Australian Gold presented substantial evidence through witness testimony and trial exhibits, which provides ample support for the jury's profits determination. Mr. Sperry testified about the costs of creating the PURPLE REIGN product, including the bottles and packets containing the product. (Doc. # 122 at 222). Mr. Sperry also testified about costs that are necessarily incurred in order to sell PURPLE REIGN, including sales and marketing employee costs, sales and marketing expenses, packaging, shipping, inventory, returns, and payroll. (Id. at 226-237). Mr Sperry also explained that "selling expenses" for PURPLE REIGN included: "costs incurred for rebates . . . trade show expenses, product giveaway, promotions that we offer, internet advertising, salon and trade magazine advertising, [and] includes also credit card fees for collecting the money." (Id. at 226).

Australian Gold employees Angela Provo and Emily Golay testified about the marketing and promotional efforts related to selling PURPLE REIGN, which included, inter alia, advertisements in national trade magazines, promotional videos, and social media. (Doc. # 123 at 44-45, 110, 112, 118-129, 141). Furthermore, Michael Mard, Australian Gold's accounting expert corroborated that Australian Gold's method of allocating costs actually related to its product sales is in accordance with generally accepted modern accounting practices. (Doc. # 123 at 195-202). Australian Gold's detailed evidence concerning its costs in creating, marketing, and selling its PURPLE REIGN product support the jury's profit determination.

In addition, assuming that the jury deducted any portion of Australian Gold's overhead or administrative costs, the Court also rejects Health & Sun's assertion that such costs should not have been deducted because Australian Gold's PURPLE REIGN product's sales constituted a "small percentage" of Australian Gold's total sales. See Maltina Corp. v. Cawy Bottling Co., Inc., 613 F.2d 582, 586 (5th Cir. 1980). The Eleventh Circuit has not endorsed Maltina's "small percentage" exception in case law, and to the contrary, the 2013 pattern jury instructions, which this Court utilized in this case, do

not include any reference to <u>Maltina</u> or the "small percentage" exception. As this Court recognized during the charging conference, the Eleventh Circuit has had over 30 years to consider <u>Maltina</u>, but has not included a discussion of <u>Maltina</u> or its damages calculus in the pattern jury instructions. (Doc. # 124 at 15-16). The Court's jury instructions, adapted from the Eleventh Circuit pattern instructions, explained:

> In determining Australian Gold's profits, Health & Sun only is required to prove Australian Gold's gross sales. Australian Gold may then prove the amount of sales made for reasons other than the infringement. Australian Gold also may prove its costs or other deductions which it claims should be subtracted from the amount of its sales to determine its profits on such sales. Any costs or deductions that Australian Gold proves by a preponderance of the evidence are required to be subtracted from the sales attributable to the infringement, and the difference is the amount that may be awarded to Health & Sun.

(Doc. # 113 at 25). Health & Sun has not convinced the Court that a different jury charge should have been included, nor has Health & Sun convinced the Court that the jury's verdict should be augmented. Health & Sun's Motion for Judgment as a Matter of Law is denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

(1) Australian Gold's Oral Motion for Judgment as a Matter of

Law (No. 1) (Doc. # 89) is **DENIED.**

(2)   Australian Gold's Oral Motion for Judgment as a Matter of Law (No. 2) (Doc. # 91) is **DENIED.**

(3)   Australian Gold's Motion for Judgment as a Matter of Law (No. 1) on Geographic Scope (Doc. # 96) is **DENIED.**

(4)   Australian Gold's Motion for Judgment as a Matter of Law (No. 2) on Abandonment (Doc. # 97) is **DENIED.**

(5)   Health & Sun's Oral Motion for Judgment as a Matter of Law (Doc. # 99) is **DENIED.**

(6)   Australian Gold's Renewed Oral Motion for Judgment as a Matter of Law (No. 1) (Doc. # 101) is **DENIED.**

(7)   Australian Gold's Renewed Oral Motion for Judgment as a Matter of Law (No. 2) (Doc. # 103) is **DENIED.**

(8)   Health & Sun's Motion for Judgment as a Matter of Law (Doc. # 107) is **DENIED.**

(9)   Australian Gold's Renewed Motion for Judgment as a Matter of Law (No. 1) on geographic Scope (Doc. # 118) is **DENIED.**

(10)  Australian Gold's Renewed Motion for Judgment as a Matter of Law (No. 2) on Abandonment (Doc. # 119) is **DENIED.**

(11)  Health & Sun's Renewed Motion for Judgment as a Matter of Law (Doc. # 135) is **DENIED.**

(12)  The Clerk is directed to enter the Court's Judgment in

accordance with the jury's verdict (Doc. # 109).

(13) The Clerk is directed to **CLOSE THE CASE**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>13th</u>

day of March, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel of Record