UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HEALTH & SUN RESEARCH, INC.
d/b/a Kava Kava Intl. and
Vegas Tan,

      Plaintiff,

v.                   Case No. 8:12-cv-2319-T-33MAP

AUSTRALIAN GOLD, LLC,

      Defendant,
_____/

AUSTRALIAN GOLD, LLC,

      Counter-Plaintiff,
v.

HEALTH & SUN RESEARCH, Inc.
d/b/a Kava Kava Intl. and
Vegas Tan,

      Counter-Defendant.
_____/

**<u>ORDER</u>**

This cause comes before the Court in consideration of
the following three Motions: (1) Plaintiff Health & Sun
Research, Inc.'s Motion for a Permanent Injunction (Doc. #
144), filed on April 3, 2014; (2) Plaintiff Health & Sun
Research, Inc.'s Motion for Attorneys' Fees and Enhanced
Damages (Doc. # 145), filed on April 3, 2014; and (3)
Defendant Australian Gold, LLC's Rule 59(e) Motion to

Equitably Reduce Damages (Doc. # 146), filed on April 3, 2014. Each motion is ripe for the Court's review. This Court held a hearing on the motions on June 13, 2014. For the reasons stated at the hearing and for the reasons that follow, the Court grants Health & Sun's request for a permanent injunction, denies Health & Sun's request for attorneys' fees and enhanced damages, denies Health & Sun's request for prejudgment interest as moot, requires further information from Australian Gold concerning post-verdict sales of the infringing PURPLE REIGN product prior to deciding the issue of disgorgement, and denies Australian Gold's request to equitably reduce damages.

I.   **Background**

On October 11, 2012, Health & Sun filed a Lanham Act complaint against Designer Skin, LLC. (Doc. # 1). On April 2, 2013, Health & Sun, Designer Skin, and its affiliate Australian Gold stipulated and jointly moved to substitute Australian Gold for Designer Skin as Defendant and Counter-Claimant. (Doc. # 35).

On January 17, 2014, after a four-day trial, the jury entered its verdict in favor of Health & Sun with respect to Health & Sun's PURPLE RAIN trademark and in favor of Australian Gold with respect to Australian Gold's ROYAL FLUSH

2

trademark. (Doc. # 109).

Among other relevant determinations, the jury found that (1) Health & Sun "own[s] rights in the PURPLE RAIN trademark that are entitled to protection;" (2) Health & Sun owns these rights on a nationwide basis; (3) "Health & Sun used its PURPLE RAIN trademark in commerce prior to the date of first use of Australian Gold's trademark in the geographic area(s) where Health & Sun owns rights;" (4) "Australian Gold's use of its PURPLE REIGN trademark causes a likelihood of confusion with Health & Sun's PURPLE RAIN trademark in the geographic area(s) where Health & Sun currently owns trademark rights;" (5) "Health and Sun ceased using the ROYAL FLUSH trademark with the intent not to resume its use in one or more geographic areas;" and (6) "Health & Sun's resumption of use of its ROYAL FLUSH trademark after Health & Sun abandoned its ROYAL FLUSH trademark caused a likelihood of confusion with Australian Gold's ROYAL FLUSH trademark." (Doc. # 109 at 1-2, 6, 8).

The jury awarded Australian Gold's profits to Health & Sun in the amount of $147,615 and Health & Sun's profits to Australian Gold in the amount of $2,285. (Id. at 2, 8). On March 17, 2014, after the disposition of post-trial motions, this Court entered its judgment in the amount of $147,615 to

Health & Sun and $2,285 to Australian Gold. (Doc. # 143).

At this juncture, Health & Sun seeks an award of attorneys' fees in the approximate amount of $270,000, an increase in the jury's damages award from $147,615 to $367,663, a permanent injunction enjoining Australian Gold from using the PURPLE RAIN trademark, and the disgorgement of Australian Gold's profits resulting from Australian Gold's post-verdict sales of PURPLE REIGN. Australian Gold seeks a reduction in the jury's damages award and opposes Health & Sun's Motion for attorneys' fees and a permanent injunction.

## II. **Analysis**

### A. **Health & Sun's Motion for Permanent Injunction**

Health & Sun requests a permanent injunction enjoining Australian Gold from manufacturing, advertising, marketing and/or selling any indoor tanning lotions that use, copy, or misappropriate the PURPLE RAIN trademark. (Doc. # 144 at 1). During the hearing held on June 13, 2014, Australian Gold conceded that it continued selling the infringing PURPLE REIGN product after the jury verdict was entered on January 17, 2014.

Before a court may grant a permanent injunction, a plaintiff seeking a permanent injunction must satisfy the following four-factor test: (1) that it has suffered an

irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). According to the Supreme Court, "[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." Id.

Health & Sun claims irreparable injury based upon the jury's finding that Australian Gold's use of PURPLE REIGN causes a likelihood of confusion with Health & Sun's PURPLE RAIN trademark. Health & Sun also argues that remedies such as monetary damages are inadequate because the loss of control over reputation and goodwill associated with Health & Sun's trademarked goods is ongoing, impossible to quantify, and causes long-term damage. According to Health & Sun, Australian Gold is unlikely to suffer substantial hardship from shutting down its production of PURPLE REIGN and a permanent injunction serves the public interest by preventing confusion in the marketplace with respect to Health & Sun's PURPLE RAIN product.

Australian Gold responds that the issue is moot because Australian Gold no longer sells PURPLE REIGN, the infringing product, and has no future plans to resume doing so. (Doc. # 147 at 1-4). However, Australian Gold concedes that it continued to sell PURPLE REIGN after the jury verdict, indicating that the issue is not moot. Nevertheless, Australian Gold argues that Health & Sun's injuries are reparable by money and that Health & Sun has not shown actual proof of irreparable injury or a likelihood of confusion leading to irreparable injury. (Id. at 4-7).

Upon due consideration of the parties' arguments, the Court grants Health & Sun's Motion for Permanent Injunction. The Court finds that Health & Sun has demonstrated that an irreparable injury exists because Australian Gold continued to sell PURPLE REIGN after the jury entered its verdict on January 17, 2014, thus causing a likelihood of confusion in the marketplace and violating Health & Sun's right to exclude third parties from infringing upon Health & Sun's protected trademark.

The Court also finds that monetary damages are inadequate to compensate Health & Sun, despite Australian Gold's argument to the contrary, because Australian Gold continued to sell PURPLE REIGN after January 17, 2014, even

though the jury verdict precluded such action. Accordingly, a permanent injunction safeguards the jury verdict and is necessary to protect Health & Sun's trademark from additional post-verdict non-compliance by Australian Gold.

Considering the balance of hardships between Health & Sun and Australian Gold, a permanent injunction imposes minimal compliance costs upon Australian Gold. A permanent injunction serves the public interest because it establishes that Australian Gold no longer sells PURPLE REIGN and protects consumers from being misled and confused if Australian Gold distributes any existing materials that advertise the infringing PURPLE REIGN product.

Accordingly, Australian Gold is prohibited from manufacturing or selling the infringing PURPLE REIGN product. As to the issue of advertisement, Australian Gold is directed to stamp all PURPLE REIGN product pages found within its annual catalogs, training guides, or related materials with a large stamp mark that says, "This product is no longer available." This requirement only applies to annual catalogs, training guides, or related materials currently within Australian Gold's possession. After the stamp mark is affixed to each PURPLE REIGN page, Australian Gold may then distribute such materials. Henceforth, Australian Gold is prohibited

from creating, promoting, or distributing any additional advertising or marketing materials that contain the infringing PURPLE REIGN product.

**B.   Health & Sun's Motion for Attorneys' Fees and Enhanced Damages**

**1. Attorneys' Fees**

Section 1117(a) of the Lanham Act governs the analysis of Health & Sun's Motion for Attorneys' Fees and Enhanced Damages. 15 U.S.C. § 1117(a). According to Section 1117(a) of the Act, if a violation of 1125(a) is established, the plaintiff is entitled, "subject to the principle of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." Id. Additionally, the Act states that "[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may, in its discretion, enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." Id.

Section 1117(a) of the Lanham Act further establishes that, in "exceptional" cases, the court, "[m]ay award reasonable attorney's fees to the prevailing party." Id. However, the Act cautions that damages awards "shall constitute compensation and not a penalty." Id.

"Although a case may rise to the level of exceptionality, the decision to grant attorney fees remains within the discretion of the trial court." Burger King Corp. v. Pilgrim's Pride Corp., 15 F.3d 166, 168 (11th Cir. 1994). In determining whether a case is exceptional under the Lanham Act, courts consider whether a defendant's conduct was "malicious, fraudulent, deliberate and willful," or one in which "evidence of fraud or bad faith" exists. Dieter v. B & H Indus. of S.W. Fla., Inc., 880 F.2d 322, 329 (11th Cir. 1989); Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1169 (11th Cir. 1982).

Health & Sun argues that this is an "exceptional case" because Australian Gold's trademark infringement was deliberate, willful, and reckless. (Doc. # 145 at 2-5). In support of its position, Health & Sun asserts that Australian Gold failed to take reasonable measures to determine whether the PURPLE REIGN mark was already being used in association with indoor tanning products, perform a meaningful search to determine whether Health & Sun's PURPLE RAIN product was on the market, or to cease using the PURPLE REIGN mark after receiving a cease and desist letter from Health & Sun. Health & Sun also directs the Court to the jury verdict which states that "Australian Gold's conduct was willful and deliberate,

Australian Gold was unjustly enriched, or an award is necessary to deter future conduct." (Doc. # 145 at 1, Doc. # 109 at 2).

However, during the hearing held on June 13, 2014, when the Court asked the amount of fees being sought, Health & Sun could only provide an approximation of $270,000. Health & Sun also could not, during the hearing, supply the Court with the hourly rates for each billing attorney or the number of hours recorded for each attorney.

Australian Gold disputes that its trademark infringement was deliberate, willful, and reckless. Australian Gold counters that this is not an exceptional case because it acted in good faith both before and after receiving the letter from Health & Sun.  In support of its position, Australian Gold emphasizes that it made reasonable searches for conflicting uses before marketing and selling PURPLE REIGN, applied for and received a federal trademark registration on PURPLE REIGN, and responded to Health & Sun's letter to investigate and defend against the claim.  Australian Gold also notes that the jury did not make an express finding of recklessness on the part of Australian Gold. According to Australian Gold, an enhancement of the jury's award in this case would constitute a penalty rather than compensation.

Upon due consideration, the Court denies Health & Sun's request for attorneys' fees. Health & Sun has not demonstrated that Australian Gold acted in a malicious, fraudulent, deliberate and willful manner, or even with fraud or bad faith. Reasonable minds may differ as to what actions Australian Gold should have taken with respect to initially researching potential trademark infringement and responding to Health & Sun's letter. However, the actions taken by Australian Gold such as searching for conflicting uses before marketing and selling PURPLE REIGN, applying for and receiving a federal trademark registration for PURPLE REIGN, and responding to Health & Sun's letter demonstrate that Australian Gold was not reckless. Australian Gold's actions do not suggest malicious, fraudulent, deliberate and willful infringement, fraud, or bad faith.

Even if Australian Gold's conduct rises to the level of exceptionality contemplated under the Lanham Act, the Court exercises its discretion to deny Health & Sun's Motion for Attorneys' Fees. Burger King, 15 F.3d at 168 ("Although a case may rise to the level of exceptionality, the decision to grant attorney fees remains within the discretion of the trial court.").

## 2. __Enhanced Damages__

In order to recover damages, the prevailing party must "demonstrate that it suffered actual damages." __Babbit Electronics, Inc. v. Dynascan Corp.__, 38 F.3d 1161, 1182 (11th Cir. 1994). In order to prove actual damages, the prevailing party must also prove "[b]oth lost sales and that the loss was caused by defendants' action." __Id.__ (quoting __Playboy Enters. v. P.K. Sorren Export Co.__, 546 F. Supp. 987, 996 (S.D. Fla. 1982)). Enhanced damages "may not be punitive, and must be based on a showing of actual harm." __Optimum Techs., Inc. v. Home Depot USA, Inc.__, 217 F. App'x. 899, 903 (11th Cir. 2007)(quoting __Babbit__, 38 F.3d at 1183). Unless the infringement is intentional, the decision to reduce or enhance damages remains within the discretion of the trial court. __Babbit__, 38 F.3d at 1183.

Health & Sun argues that its recovery based on Australian Gold's profits is inadequate. In support of its position, Health & Sun emphasizes the possibility of willful infringement on the part of Australian Gold and the continued infringement of Health & Sun's trademark by Australian Gold after the final jury verdict. Within its Motion, Health & Sun initially requested the Court to treble the damages awarded by the jury from $147,615 to $442,845. (Doc. # 145 at 6).

However, at the hearing held on June 13, 2014, Health & Sun reduced its enhanced damages request from $442,885 to $367,663.

Australian Gold contends that an enhancement of the jury's award, in any amount, would constitute a penalty rather than compensation. Australian Gold asserts that there is no evidence that Health & Sun was actually harmed or that its PURPLE RAIN product's sales or profits were affected by Australian Gold's sale of PURPLE REIGN. Australian Gold notes that the jury's award is more than fourteen times Health & Sun's total sale of its PURPLE RAIN product over an eight-year period and that there is no evidence of confusion or lost sales.

Having considered the parties' arguments, the Court denies Health & Sun's request for enhanced damages. Health & Sun has not established that Australian Gold's trademark infringement caused actual damages to Health & Sun or that its PURPLE RAIN product's sales or profits were affected by Australian Gold's sale of PURPLE REIGN. Merely claiming unspecified damages to Health & Sun's reputation and confusion in the marketplace, without providing the Court with specific evidence of such damages, is insufficient to warrant an enhancement of damages. Specifically, Health & Sun

has not demonstrated either lost sales of PURPLE RAIN or that such lost sales were caused by Australian Gold's conduct. <u>See</u> Babbit, 38 F.3d at 1182.

Furthermore, Health & Sun has not demonstrated that Australian Gold's infringement was intentional. The actions taken by Australian Gold such as searching for conflicting uses before marketing and selling PURPLE REIGN, applying for and receiving a federal trademark registration for PURPLE REIGN, and responding to Health & Sun's letter suggest otherwise. Additionally, the jury did not make an express finding that Australian Gold actually intended to infringe Health & Sun's trademark. Rather, the jury found that "Australian Gold's conduct was willful and deliberate, Australian Gold was unjustly enriched, *or* an award is necessary to deter future conduct." (Doc. # 109 at 2)(emphasis added). Although the jury may have concluded that Australian Gold intended to infringe Health & Sun's trademark, the jury may have alternatively concluded that Australian Gold acted unintentionally, misguidedly, or negligently. Generally, it is not the province of the Court to augur the thoughts, reasoning, or decision-making of the jury.

Finally, enhancing the jury's award in this case would be punitive and constitute a penalty rather than damages. The

Court accordingly denies Health & Sun's request for enhanced damages.

### 3.   **Prejudgment Interest**

Health & Sun's Motion for Attorneys' Fees and Enhanced Damages also requests prejudgment interest and disgorgement of post-verdict profits.  At the hearing held on June 13, 2014, Health & Sun orally withdrew its request for prejudgment interest. Therefore, the Court denies Health & Sun's request as moot.

### 4.   **Disgorgement**

Health & Sun requests the Court to disgorge any post-verdict profits made by Australian Gold as to PURPLE REIGN. Health & Sun also requests limited discovery to determine whether Australian Gold made sales of PURPLE REIGN after the date of the jury's verdict.

Australian Gold responded to Health & Sun's Motion by indicating that it has ceased selling PURPLE REIGN and has no plans to resume selling the infringing product, presumably rendering disgorgement unnecessary. (Doc. # 147 at 3). Australian Gold filed the declaration of Martin Sperry, overseer of the accounting functions at Australian Gold, to demonstrate that it has ceased selling PURPLE REIGN and has no plans to resume doing so. (Doc. # 147-1).

However, at the hearing held on June 13, 2014, Australian Gold admitted that it made sales of PURPLE REIGN after the jury verdict was entered on January 17, 2014. Thus, Australian Gold's declaration that it has ceased selling PURPLE REIGN and has no plans to resume doing so is not dispositive as to the issue of disgorgement of post-verdict profits.

Since Australian Gold has not supplied the Court with the exact date upon which it ceased selling PURPLE REIGN and did not specify the number of units sold, the Court does not have sufficient information to determine whether disgorgement of post-verdict profits, if any, is appropriate at this time. Accordingly, by June 27, 2014, Australian Gold is directed to provide the Court and Health & Sun with a report detailing the following: 1) the total number of PURPLE REIGN units sold on or after January 17, 2014, 2) the date of each PURPLE REIGN unit sale made on or after January 17, 2014, 3) the sales price of each PURPLE REIGN unit sold on or after January 17, 2014, and 4) the name and/or customer identification of each purchaser that AUSTRALIAN GOLD sold one or more PURPLE REIGN units to on or after January 17, 2014.

Within ten days of the Court receiving this information, the Court directs Health & Sun and Australian Gold to file separate submissions specifying how much profit, if any,

should be disgorged from Australian Gold as a result of
Australian Gold's post-verdict sales of PURPLE REIGN.
Alternatively, Health & Sun and Australian Gold may submit a
joint resolution of the matter to the Court for approval. The
Court will issue a separate order as to disgorgement after it
receives the information described above.

### C. __Australian Gold's Motion to Reduce Damages__

Section 1117(a) of the Lanham Act governs the analysis
of Australian Gold's Motion to Equitably Reduce Damages. 15
U.S.C. § 1117(a). "[T]he law in this Circuit is well settled
that a plaintiff need not demonstrate actual damage to obtain
an award reflecting an infringer's profits under § 35 of the
Lanham Act." Burger King, 855 F.2d at 781. An accounting for
profits furthers the congressional purpose of making
infringement unprofitable, deprives the defendant of unjust
enrichment, and provides a deterrent to similar activity in
the future. Id. An award of profits based upon either unjust
enrichment or deterrence is not "dependent upon a higher
showing of culpability on the part of [the] defendant, who is
purposely using the trademark." Id. Additionally, the Lanham
Act "confers broad discretion upon the district court to
fashion the assessment of damages," according to the specific
circumstances of each case. Id. at 782. As mentioned

previously, damages awards "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a).

Australian Gold argues that the jury's award constitutes a penalty rather than compensation because there is no evidence that Health & Sun was actually harmed or that its PURPLE RAIN product sales or profits were affected by Australian Gold's product. Australian Gold emphasizes the low level of sales made by Health & Sun of PURPLE RAIN, constituting approximately $10,000 over a ten-year period. Australian Gold also asks this Court to consider equitable factors including Health & Sun's "undisputed" and "unexcused" fourteen month failure to reply to Australian Gold's requests for information regarding Health & Sun's claims of PURPLE RAIN trademark rights. (Doc. # 146 at 3-4, 6).

Health & Sun counters that it did not need to demonstrate actual damages in order to receive Australian Gold's profits under the Lanham Act. Additionally, Health & Sun asserts that reducing Australian Gold's damages would disregard the jury finding that "Australian Gold's conduct was willful and deliberate, Australian Gold was unjustly enriched, or an award is necessary to deter future conduct." (Doc. # 149 at 3). Health & Sun disputes that its actions compel an equitable

reduction in profits and cites the jury's verdict in support. (Doc. # 109 at 7).

Balancing the equities and considering the facts presented, the Court denies Australian Gold's request to equitably reduce damages. Australian Gold has not demonstrated that the jury's award of Australian Gold's profits to Health & Sun constitutes a penalty rather than compensation. Although the award exceeds the total sales of Health & Sun over a ten-year period, the Lanham Act does not require a showing of actual damages for a prevailing party to receive an infringer's profits. Burger King, 855 F.2d at 781. Rather, under the Lanham Act, the jury was free to award Australian Gold's profits to Health & Sun on the basis of willfulness, deterrence, or unjust enrichment without requiring Health & Sun to make a higher showing of culpability on the part of Australian Gold. Id.; (Doc. # 109 at 2). The jury determined that the damages award was necessary to compensate Health & Sun for Australian Gold's conduct, deter future conduct, prevent unjust enrichment, or any combination of the aforementioned. (Doc. # 109 at 2). Such determinations are left to the province of the jury.

### III. <u>Conclusion</u>

In conclusion, the Court grants Health & Sun's request for a permanent injunction, denies Health & Sun's request for attorneys' fees and enhanced damages, denies Health & Sun's request for prejudgment interest as moot, requires further information from Australian Gold concerning post-verdict sales of the infringing PURPLE REIGN product prior to deciding the issue of disgorgement, and denies Australian Gold's request to equitably reduce damages.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1)  Health & Sun's Motion for Permanent Injunction (Doc. # 144) is **GRANTED** as specified herein.

(2)  Health & Sun's Motion for Attorneys' Fees and Enhanced Damages (Doc. # 145) is **DENIED** as to attorneys' fees, **DENIED** as to enhanced damages, and **DENIED AS MOOT** as to prejudgment interest. As to disgorgement, the Court directs Australian Gold to file a report of its post-verdict sales of PURPLE REIGN on or before June 27, 2014, as specified above. The parties have ten days from the filing of that report to file separate submissions regarding disgorgement or a joint resolution of the

matter. The Court will issue a separate order after it receives this information from the parties.

(3)   Australian Gold's Rule 59(e) Motion to Equitably Reduce Damages (Doc. # 146) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 19th day of June, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record